UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Martin Dominquez and Victor Castillo,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

            Civ. No. 06-1002 (RHK/AJB)
            **MEMORANDUM OPINION AND**
            **ORDER**

v.

Minnesota Beef Industries, Inc.,

       Defendant.

---

Timothy B. Fleming, Keir S. Bickerstaffe, Wiggins, Childs, Quinn & Pantazis, PLLC, Washington, D.C., Mark D. Luther, Sean J. Rice, Minneapolis, Minnesota, for Plaintiffs.

William J. Egan, Oppenheimer Wolff & Donnelly LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiffs Martin Dominquez and Victor Castillo have sued their former employer, Minnesota Beef Industries, Inc. ("Minnesota Beef"), on behalf of themselves and all others similarly situated, alleging that the company violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* (the "FLSA"), when it failed to pay them overtime for time spent "donning and doffing"[1] protective clothing. Plaintiffs now move for an Order conditionally

---

[1] "Donning" an item of clothing means to obtain it and put it on, while "doffing" means taking the item off and storing it. See Tum v. Barber Foods, Inc., 360 F.3d 274, 283 (1st Cir. 2004), rev'd in part on other grounds *sub nom.* IBP, Inc. v. Alvarez, 546 U.S. 21 (2005).

certifying this case as a "collective action" under the FLSA. For the reasons set forth below, the Court will grant Plaintiffs' Motion.[2]

## BACKGROUND

Plaintiffs are former employees of Minnesota Beef's Buffalo Lake, Minnesota plant. The plant processed beef, from the procurement and slaughter of cattle all the way to the packaging and shipping of final beef products to wholesalers in the United States and abroad. The plant closed in February 2006.

Most of Minnesota Beef's hourly employees worked in one of two locations at the plant: the "kill floor" or the "boning room." The kill floor is where animals were slaughtered, eviscerated, and split, while the boning room is where animals were broken into smaller pieces before being packaged and sold to wholesalers or other buyers. At the time the plant closed, there were 53 hourly employees working on the kill floor and 57 hourly employees working in the boning room.

Minnesota Beef employees who worked in either of these two areas were required to wear protective gear in order to avoid injuries and prevent the beef products from becoming contaminated. The protective gear consisted of some combination of the following, depending on the employee's particular job duties: a hardhat; a hairnet; earplugs; cloth gloves; cut gloves; rubber gloves; mesh gloves; arm guards; a belly guard; an apron;

---

[2] Having concluded that oral argument on Plaintiffs' Motion will not materially assist the Court in resolving the issues raised therein, the hearing in this matter scheduled for August 28, 2007, is **CANCELED**.

and a frock. Plaintiffs assert that hourly beef-production employees were required to "don" this protective gear prior to their shift start times and "doff" the protective gear after their shifts officially ended. In addition, Plaintiffs assert that employees were required to doff the protective gear prior to taking breaks, and then required to don the gear when such breaks were completed. Plaintiffs contend that neither they nor the putative class members were compensated for the time spent donning and doffing this protective gear.

## DISCUSSION

Plaintiffs move to conditionally certify this case as a "collective action" and request that the Court authorize notice to be issued to potential class members. Specifically, Plaintiffs propose the following FLSA class: "All persons who worked at Minnesota Beef Industries, Inc. as hourly wage production line employees at any time since March 8, 2003 at its Buffalo Lake, Minnesota plant."[3]

The FLSA provides that an action may be maintained "by any . . . employee[] for and in behalf of himself . . . and other employees similarly situated" to recover damages for the failure to pay overtime. 29 U.S.C. § 216(b). Such an action is known as a "collective action." E.g., Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th Cir. 2004); Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.). An FLSA "collective action" differs from a class action under Federal Rule of Civil Procedure 23. In a class action, a potential plaintiff's claim is automatically included in the case

---

[3] March 8, 2003 is three years prior to the date this action was commenced. The FLSA has a three-year statute of limitations for "willful" violations. 29 U.S.C. § 255(a); Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1082 (8th Cir. 2000).

unless he expressly "opts out" of the class. By contrast, a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); Schmidt v. Fuller Brush Co., 527 F.2d 532, 536 (8th Cir. 1975); Heartland, 404 F. Supp. 2d at 1149.

Courts may facilitate the opt-in process by "authorizing the named Plaintiffs . . . to transmit a notice [of the lawsuit] to potential class members." West v. Border Foods, Inc., Civ. No. 05-2325, 2006 WL 1892527, at *2 (D. Minn. July 10, 2006) (Frank, J., adopting Report and Recommendation of Erickson, M.J.). The power to authorize notice, however, "is to be exercised . . . only in 'appropriate cases,' and remains within the discretion of the district court." Id. (quoting Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)). For a district court to authorize such notice, the named plaintiffs must first show that they are "similarly situated to the employees whom [they] seek[] to represent." Mares v. Caesars Entm't, Inc., No. 4:06-cv-0060, 2007 WL 118877, at *2 (S.D. Ind. Jan. 10, 2007); accord Heartland, 404 F. Supp. 2d at 1149. Yet, doing so is complicated by the fact that the FLSA nowhere defines the term "similarly situated." As a result, courts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action

>    should be given to potential class members.
>
>    Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action [then] proceeds as a [collective] action throughout discovery.
>
>    The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting Mooney v. Aramco Servs. Corp., 54 F.3d 1207, 1213-14 (5th Cir. 1995)); accord West, 2006 WL 1892527, at *2; Heartland, 404 F. Supp. 2d at 1149-50.

Here, Plaintiffs seek an Order conditionally certifying this case as a collective action, in order to notify all potential plaintiffs of the pendency of this lawsuit and to provide them with the opportunity to opt in.  Hence, the Court is at the first stage of the two-stage process.[4]  Plaintiffs' burden at this stage is not onerous.  E.g., Hipp, 252 F.3d at 1218; Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005) (noting that, at first stage, "most courts agree that the standard is fairly lenient"); Heartland, 404 F. Supp. 2d at 1149 (burden at first stage is "not rigorous").  They need only establish a colorable basis for their claim that the putative class members were the victims of a single

---

[4] In its Opposition, Minnesota Beef appears to argue otherwise.  (See Mem. in Opp'n at 22 (suggesting that the Court should "bypass the first stage and proceed directly to the second stage of the certification analysis" because the parties have engaged in some discovery); but see id. at 20-21 (recognizing that this matter is at "the notice stage").)  However, based on the limited amount of discovery that has occurred and Magistrate Judge Boylan's Scheduling Order (which bifurcated discovery for purposes of class certification), the Court concludes that this matter is at the first, or notice, stage.

decision, policy, or plan. Frank v. Gold'n Plump Poultry, Inc., Civ. No. 04-1018, 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005) (Ericksen, J.). The Court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage. Id. at *3 n.2.

Plaintiffs assert that the members of the proposed class are similarly situated because the positions and job duties of the putative class members were substantially similar to Plaintiffs', as were the articles of clothing donned and doffed. In response, Minnesota Beef argues that determining the amount of time taken by each employee to don and doff his or her protective equipment requires an individualized inquiry, which renders this case inappropriate for collective-action treatment. In addition, Minnesota Beef argues that the proposed class is overbroad because not all employees within the class wore protective gear and many employees "indisputably" were paid for time spent donning and doffing.

In Dege v. Hutchinson Technology, Inc., Civ. No. 06-3754, 2007 WL 586787 (D. Minn. Feb. 22, 2007), another donning-and-doffing case, the defendant opposed the plaintiffs' conditional-class-certification motion with nearly identical arguments to those raised by Minnesota Beef here. In light of the minimal burden facing the plaintiffs, District Judge Donovan W. Frank of this Court succinctly rejected the defendant's arguments and conditionally certified the case as a collective action. The undersigned fully agrees with and, accordingly, adopts Judge Frank's opinion in Dege:

The Court finds that Plaintiffs have met their burden for purposes of conditional

> class certification and notice at this initial stage of the proceedings. [The evidence] establishes a colorable basis for [Plaintiffs'] claim that the putative class members were victims of a common practice of not compensating employees for time spent donning and doffing protective gear. Each plaintiff has asserted that he [was] required to work in a [room where he was] required to don and doff protective gear. Each employee has also averred that he [was not] compensated for the time spent donning or doffing the protective gear. Considering Plaintiffs' minimal burden at this stage of the proceedings, the Court finds that this evidence is sufficient to establish a colorable basis for Plaintiffs' claims.

2007 WL 586787, at *2. Minnesota Beef's arguments concerning "the individualized inquiries required and the merits of Plaintiffs' claims are inappropriate at this stage of the proceeding" and can be raised before the Court at the second, or decertification, stage. Id. At this juncture, however, the Court concludes that Plaintiffs have satisfied their minimal burden of showing that they are similarly situated to the putative class.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion (Doc. No. 29) is **GRANTED IN PART**, and this matter is conditionally certified as a collective action. Any issues raised in the Motion concerning the form of notice to be sent to potential class members – including the

contents of the notice, the deadlines set forth therein for submitting opt-ins, etc. – should be directed to Magistrate Judge Boylan.

Dated: August  21 , 2007                                                    s/Richard H. Kyle
                                                                                               RICHARD H. KYLE
                                                                                               United States District Judge